# EXHIBIT "A"

## 2184CV02585 Prezerv Technologies Inc vs. Morari, Alessandro



- Case Type:
- Business Litigation
- Case Status:
- Open
- File Date
- 11/09/2021
- DCM Track:
- 
- Initiating Action:
- Proprietary Information or Trade Secrets
- Status Date:
- 11/09/2021
- Case Judge:
- 
- Next Event:

| All Information | Party | Event | Docket | Disposition |
| --- | --- | --- | --- | --- |



### Party Information

**Prezerv Technologies Inc**
- Plaintiff

| Alias | Party Attorney |
| --- | --- |
|  | Attorney |
|  | Ausrotas, Esq., Raymond Patrick |
|  | Bar Code |
|  | 640315 |
|  | Address |
|  | Arrowood LLP |
|  | 10 Post Off Square |
|  | 7th Floor South |
|  | Boston, MA  02109 |
|  | Phone Number |
|  | (617)849-6200 |
|  | Attorney |
|  | McGonigle, Esq., W.F. |
|  | Bar Code |
|  | 569490 |
|  | Address |
|  | Arrowood LLP |
|  | 10 Post Off Square |
|  | 7th Floor South |
|  | Boston, MA  02109 |
|  | Phone Number |
|  | (617)849-6208 |

More Party Information

**Morari, Alessandro**
- Defendant

| Alias | Party Attorney |
| --- | --- |

More Party Information

**Garofalo, Bartolomeo**
- Defendant

| Alias | Party Attorney |
| --- | --- |

More Party Information

**Solidium AI Inc**
- Defendant

| Alias | Party Attorney |
| --- | --- |

More Party Information

**Domeniconi, Giacomo**
- Defendant

| Alias | Party Attorney |
|---|---|

**More Party Information**

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 11/17/2021 11:00 AM | Business Litigation 2 | BOS-10th FL, CR 1017 (SC) | Motion Hearing | Ricciuti, Hon. Michael D | Canceled |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 11/09/2021 | Attorney appearance<br>On this date W.F. McGonigle, Esq. added for Plaintiff Prezerv Technologies Inc | | |
| 11/09/2021 | Attorney appearance<br>On this date Raymond Patrick Ausrotas, Esq. added for Plaintiff Prezerv Technologies Inc | | |
| 11/09/2021 | Original civil complaint filed. | 1 | Image |
| 11/09/2021 | Civil Action Cover Sheet filed. | 2 | Image |
| 11/09/2021 | Plaintiff Prezerv Technologies Inc's Motion for Preliminary Injunction | 3 | Image |
| 11/09/2021 | Plaintiff Prezerv Technologies Inc's Motion for Short Order of Notice | 4 | Image |
| 11/09/2021 | Prezerv Technologies Inc's MOTION for appointment of Special Process Server. | 5 | Image |
| 11/09/2021 | Docket Note: 11/9/21 Paid Ten summonses Six Summonses in hand | | |
| 11/10/2021 | Summons and order of notice issued on a Complaint for a Preliminary Injunction , returnable on 11/17/2021 11:00 AM Motion Hearing.<br><br>Judge: Ricciuti, Hon. Michael D<br>Applies To: Garofalo, Bartolomeo (Defendant); Solidium AI Inc (Defendant); Domeniconi, Giacomo (Defendant); McGonigle, Esq., W.F. (Attorney) on behalf of Prezerv Technologies Inc (Plaintiff) | 6 | |
| 11/10/2021 | Event Result:: Motion Hearing scheduled on:<br>11/17/2021 11:00 AM<br>Has been: Canceled    For the following reason: By Court prior to date<br>Comments: TRO issued without a hearing<br>Hon. Michael D Ricciuti, Presiding<br>Staff:<br>    Brenda Shisslak, Assistant Clerk Magistrate | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Pending | | |

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SECTION

21-2585

---

PREZERV TECHNOLOGIES, INC.,

Plaintiff,

v.

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

Defendants.

---

## VERIFIED COMPLAINT & JURY DEMAND

When startup company Prezerv Technologies, Inc. ("Prezerv") hired Defendants Alessandro Morari, Giacomo Domeniconi, and Bartolomeo Garofalo to assist with the development of its innovative and potentially valuable business idea, Prezerv thought it was aligning itself with talented engineers who would contribute to the growth of a promising early-stage business venture.

Instead, Defendants engaged in a malicious, extended, methodical, digital theft of Prezerv's confidential information and trade secrets—and attempted cover-up of the same. As detailed herein, Defendants not only stole copies of Prezerv's proprietary data, code, and business plans; not only destroyed copies of the same that remained with Prezerv; not only attempted to spoliate evidence of their misdeeds; but misappropriated Prezerv's confidential information for their own benefit by doing little more than replacing Prezerv's name on documents with their own.

1

Defendants' actions breach multiple agreements between the parties, state and federal statutes, and the common law.  Immediate and thorough relief is necessary to make Prezerv whole.

## PARTIES

1.      Plaintiff Prezerv Technologies, Inc. ("Prezerv") is a startup company developing a software platform to enable the automatic management of civil infrastructure. The Prezerv platform will provide accurate 3D maps of underground infrastructure such as utilities and valuable information about the in-situ condition of other infrastructure such as roads, tunnels, railways, and bridges. Prezerv intends to sell its products and services to a wide range of customers such as municipalities, infrastructure agencies, construction contractors, engineering firms and utility companies. Prezerv's software platform uses an innovative combination of machine learning, cloud computing, ground penetrating radar ("GPR") and other complementary non-destructive testing technologies.  Prezerv's principal place of business is located in Somerville, Middlesex County, Massachusetts.  At all times complained of herein, Prezerv was engaged in the conduct of trade or commerce and acting in a business context.

2.      Defendant Alessandro Morari ("Morari") is an individual, on information and belief, currently residing in Westchester County, New York.  During some of the times complained of herein, Morari resided in Katonah, Westchester County, New York and Everett, Middlesex County, Massachusetts.

3.      Defendant Giacomo Domeniconi ("Domeniconi") is an individual residing in White Plains, Westchester County, New York.

4.      Defendant Bartolomeo Garofalo ("Garofalo") is an individual residing in Dawsmere Close, Camberley, United Kingdom.

5.      Defendant Solidium.AI, Inc. ("Solidium") is a Delaware corporation whose core team consists of Morari, Domeniconi, and Garofalo.  On information and belief, Solidium's principal place of business is the same as its CEO, Morari: Westchester County, New York.  At all times

2

herein, Solidium was engaged in the conduct of trade or commerce and acting in a business context.

**JURSIDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to G.L. c. 212 §§ 3 and 4, as the amount in controversy exceeds $50,000, exclusive of interests and costs.

7.      This Court has personal jurisdiction pursuant to G.L. c. 223A § 3, as Defendants have transacted the relevant business in the Commonwealth, were contracted to supply services within the Commonwealth, and caused tortious injury within the Commonwealth.  Further, Defendants Morari, Domeniconi, and Garofalo have all agreed and submitted to this Court's jurisdiction for the purposes of the claims brought herein.

8.      Venue is proper in Suffolk County pursuant to G.L. c. 223 § 8 as Prezerv is a corporation that may sue or be sued in Suffolk.  Venue is further proper in Suffolk County as Defendants Morari, Domeniconi, and Garofalo have all agreed and submitted to the jurisdiction of the Business Litigation Session of the Suffolk Superior Court for the purposes of the claims brought herein.

**STATEMENT OF FACTS**

**I.      <u>Raufi's Entrepreneurial Insights in Founding Prezerv</u>**

9.      Prezerv's founder, CEO, and President is Cambiz "Cam" Raufi.  ("Raufi.")  Raufi is an entrepreneur who holds Bachelor's, Master's and PhD degrees in civil engineering and a Master's degree in business administration.  In addition to his extensive education, Raufi has worked on major infrastructure, engineering, and construction projects for international corporations such as Bechtel and local utilities including the MBTA, all of which has provided him significant experience with design, construction, and maintenance of civil infrastructure.

10.     Raufi identified several problems plaguing the civil infrastructure industry.  First, the data used by contractors and engineers was collected and managed on a small scale.  Second, many of

3

their processes were manual and slow with long turnaround times.  Third, there was a lack of

accurate, readily accessible sub-surface data.  For example, engineers involved in underground

infrastructure projects all too often had to gather historical data and piece together incomplete,

out-of-date maps to try and identify the location of utility lines, sewers, pipes, or other

obstructions before digging into the earth.  The absence of accurate and affordable maps of

underground infrastructure often results in damages to underground utilities and subsequent

public service disruptions, construction project delays, road closures, environmental harms,

business income loss, and fatal and other injuries.  Ground penetrating radar ("GPR") technology

was sometimes used for mapping, but it was limited because it relied on human interpretation,

was expensive and was not offered on a large scale.  Raufi also recognized that these three

problems created similar negative consequences for the ongoing assessment and maintenance of

other infrastructure such as roads, tunnels, railways, and bridges.

11.     In early 2018, Raufi began formulating his technical ideas for solving these problems,

conducted some preliminary technical and market research, and started planning a business to

capitalize on the idea.  In March 2019, he registered the domain name "Prezervtech.com".  He

would ultimately name the company Prezerv Technologies, Inc.  Later in 2019 and early 2020,

Raufi's ideas crystallized with his insight to solve these infrastructure problems by combining

machine learning, cloud computing, GPR and other complementary technologies such as light

detection and ranging ("Lidar") and high-definition imaging, in one easily accessible, low-cost

platform.

12.     At the center of Raufi's idea was an algorithm that would automate the process of

collecting, parsing, and piecing data together to provide construction contractors and engineers

with a reliable map of every underground obstacle they needed to be wary of, and do so on-

demand, with no delays, and with regular updates.  In addition to solving the underground infrastructure problem for construction and engineering projects, the platform could be used to assess the health of other infrastructure such as the condition of roads, tunnels, railways, and bridges.

13.     Based on his engineering experience, Raufi understood that Prezerv's services would have world-wide application. Municipalities; infrastructure agencies; private and public utility, energy, construction, and transportation companies; engineering firms; in the U.S. and abroad— all represent potential customers that could benefit from Prezerv's technology.  Raufi's early market research indicated that Prezerv's potential addressable market size exceeded $200 billion and was growing.

14.     Recognizing Prezerv's potential, Raufi began investing significant time and money into his ideas.  By way of estimate only, Raufi spent over 5,000 hours since 2018 developing Prezerv, its confidential information, and its trade secrets.

**II.     Prezerv Hires Morari, Domeniconi, and Garofalo, All Who Sign Confidentiality Agreements Protecting Prezerv's Confidential Information and Trade Secrets**

15.     After identifying the customer problem, the potential customers for a technical solution based on Raufi's idea and the market size, Raufi needed to hire technical expertise to help him develop Prezerv's technology, products, and services.

16.     In July 2020, Raufi was introduced to Morari, who was an engineer at IBM Corporation. Raufi discussed his business idea with Morari. Morari had machine learning experience but no experience with civil infrastructure, GPR or other similar technologies.  Morari thought Raufi's idea was "brilliant" and they began a months-long discussion about how they might work together.  In the fall of 2020, Morari began some part-time technical work for Prezerv.  Raufi and Morari decided to officially form Prezerv in January 2021 and on January 4, 2021 Raufi

incorporated Prezerv as a Delaware corporation by filing Prezerv's Certificate of Incorporation with the Delaware Division of Corporations. Raufi was Prezerv's Chief Executive Officer ("CEO") and President; Morari was Prezerv's Chief Technology Officer ("CTO"). Raufi and Morari were the two members of Prezerv's Board of Directors. Raufi was the majority shareholder.

17.     In December 2020, Morari introduced Raufi to Domeniconi, who was a colleague of Morari's at IBM and suggested to Raufi that Domeniconi had machine learning experience and would be a good addition to Prezerv. Prezerv would eventually hire Domeniconi on a part-time basis to be Prezerv's Director of Artificial Intelligence.

18.     On or as of January 4, 2021, Morari and Domeniconi entered into multiple agreements with Prezerv. First, and perhaps most importantly, were "Agreement(s) Regarding Assignment of Inventions, Confidentiality and Non-Solicitation." (Exs. 1 & 2, the "Confidentiality Agreements.") (Raufi also signed a similar Confidentiality Agreement with Prezerv on January 4, 2021.) Prezerv required Morari and Domeniconi to execute these Confidentiality Agreements for a variety of reasons, one being that the Confidentiality Agreements were a customary and reasonable measure taken to protect Prezerv's confidential information and trade secrets. These Confidentiality Agreements contained multiple provisions that, by way of Defendants' actions, are now at issue. These include terms:

    a.  Prohibiting the use or disclosure of any of Prezerv's confidential information without prior written consent (§1);

    b.  Requiring the return of any of Prezerv's property in their possession (including documents, devices, data, correspondence, and software) "immediately upon

6

termination" and prohibiting Defendants from retaining any property or copies thereof after termination (§2);

 c. Stating that all inventions and useful ideas Defendants conceive or develop during their relationship with Prezerv that relate to Prezerv's business or Prezerv's products or services, result from their duties at Prezerv or result from their use of Prezerv's proprietary information, premises or property will be the sole property of Prezerv (§3);

 d. Prohibiting solicitation or hiring of any person away from Prezerv (§6.1);

 e. Prohibiting the solicitation of Prezerv's customers in any way or otherwise adversely modify Prezerv's relationships with those customers (§6.1);

 f. Acknowledging the need for injunctive relief in the event of any breach of the Confidentiality Agreements (§8.1);

 g. Establishing the right of Prezerv to recover all costs incurred, including attorneys' fees, from having to enforce the terms of the Confidentiality Agreements (§8.1);

 h. Agreeing to the application of Massachusetts law for actions concerning the Confidentiality Agreements (§8.8); and

 i. Consenting to the jurisdiction of the Suffolk Superior Court Business Litigation Session for all related disputes (§8.8).

19. On January 4, 2021, Morari also entered into a Restricted Stock Grant Agreement with Prezerv.  (Ex. 3, the "Stock Agreement.")  The Stock Agreement granted shares of Prezerv stock to Morari, subject to a vesting schedule under which Morari would forfeit a portion of the shares upon Morari's termination from Prezerv if the termination occurred before September 1, 2024.  (§2(a).)  The vesting schedule provided that a portion of the shares would "vest" and no longer

7

be subject to this type of forfeiture each month until September 1, 2024.  However, if Morari

engaged in any misconduct—before or after his termination—all of the shares he held would be

automatically forfeited and revert to Prezerv as Restricted Shares.  (§2(f).)  "Misconduct" was

defined as, among other things, the unauthorized use or disclosure of Prezerv's confidential

information or trade secrets.  (§18(f).)  The Stock Agreement also acknowledged Prezerv's

potential need for injunctive relief (§14) and selected Massachusetts law to govern its terms

(§13).

20.     In May 2021, Prezerv was introduced to Garofalo who had experience with GPR and

other technologies that Morari and Domeniconi lacked. On May 11, 2021, Prezerv engaged

Garofalo as a consultant to interpret and analyze the GPR data that Prezerv had collected.  In

doing so, Garofalo signed a Confidentiality Agreement similar to those signed by Morari and

Domeniconi and including the same pertinent terms.  (Ex. 4.)

21.     Prezerv purchased and issued Lenovo laptops to Morari and Domeniconi for them to use

for their Prezerv work.  Prezerv also purchased and provided to Morari two external computer

hard drives for him to use for his Prezerv work.  Morari and Domeniconi stored some of their

Prezerv work on the Prezerv laptops.  They also used these laptops to access some of their

Prezerv work in Prezerv's shared workspaces such as "cloud" environments including Google

Cloud.  Prezerv did not issue a laptop to Garofalo.  He used his own computer to perform his

Prezerv work and access Prezerv's shared cloud workspaces.

22.     In about June 2021, Morari informed Raufi that Domeniconi had been using IBM's

research cloud servers for some of his Prezerv work. Shortly thereafter, Raufi directed

Domeniconi to stop using IBM's servers for his Prezerv work.

23.     Morari's and Domeniconi's principal responsibility at Prezerv was to develop Prezerv's machine learning algorithm and software for the management of its database. Garofalo's principal responsibility was to manage the annotation process for identifying and cataloging its data, including training a team of annotators engaged by Prezerv and to provide quality control. Raufi intended to hire additional technical experts for various other technical components of Prezerv's business, such as user interface and website design.

24.     During the course of their work for Prezerv, Defendants Morari, Domeniconi and Garofalo used a number of third-party software development platforms and tools, including Google Cloud for the platform infrastructure, the GitHub online software platform to manage the development of Prezerv's software code, the Monday.com visualization and project management tool and the Dagster workflow management tools.  As described above, Morari and Domeniconi accessed these platforms and tools with Prezerv-issued laptops and Garofalo accessed these platforms and tools with his own computer.

### III.     Prezerv Invests Significant Resources Into Developing Its Technology and Business

25.     From January through July 2021, Prezerv invested significant time and resources into developing its technology and business. Raufi focused primarily on business and financing strategy, planning and development and guiding Defendants on their technical work.

26.     In January 2021, Prezerv incurred and paid fees and expenses to its outside legal counsel for legal work performed in connection with the incorporation and organization of Prezerv.

27.     In late February and March 2021, Prezerv used considerable funds to rent commercial scanning equipment to scan the streets and subsurface of Cambridge, Massachusetts to accumulate over 800 miles of GPR data. This data was to be processed and annotated by

Garofalo and used to train the machine learning algorithm being developed by Morari and Domeniconi at the core of Prezerv's software platform.

28.     In April 2021, Prezerv applied to the National Institute for Standards and Technology ("NIST") for grant funding in a proposal entitled "Data Platform for Improving Resiliency and Automated Management of Transportation Infrastructure." The contents of Prezerv's application were confidential.

29.     In July 2021, Prezerv applied to the National Science Foundation ("NSF")'s Small Business Innovation Research (SBIR) Program for grant funding to accelerate the development of Prezerv's prototype platform. The contents of Prezerv's application were confidential.

30.     In or about September 2020, after Raufi described to Morari his plans for the business that would be formally incorporated as Prezerv on January 4, 2021, Morari made a connection with Autostrade Tech S.p.A, a venture capital division of Autostrade per l'Italia, one of Europe's leading concessionaries for the construction and management of toll motorways. Autostrade was interested in Raufi's solution. Under Raufi's supervision, Morari began technical discussions with Autostrade's technical team. Starting in February 2021, Prezerv and Autostrade worked on technical proposals, including Prezerv conducting research and development work that the two companies hoped would ultimately lead to a pilot project in which Prezerv would test its technology and Autostrade would make a financial investment. In about May 2021, Prezerv's and Autostrade's negotiations shifted to include more business terms. Prezerv engaged legal counsel in Rome, Italy to represent its interests in the negotiations with Autostrade. On July 7, 2021, Prezerv and Autostrade signed a Non-Disclosure Agreement to advance the negotiations.

31.     In March 2021, Prezerv applied to participate in the MassChallenge startup accelerator program. Prezerv was accepted into the program and Raufi actively participated in the program

from June through early October 2021. In this program, Raufi was provided mentorship and advice on Prezerv's business and developed valuable contacts.

32.     From February through October 2021, Raufi spent considerable time and effort discussing Prezerv's business with potential investors, business partners and prospective customers.

33.     In February and March 2021, Prezerv began to consider Prezerv ideas that could possibly be patented with the U.S. Patent and Trademark Office ("USPTO"). In March and April 2021, Prezerv prepared internal drafts of materials with these ideas and hired an outside patent counsel. During June and July 2021, the patent counsel used the materials Prezerv had prepared to prepare an official patent application. Prezerv's patent counsel filed a provisional patent application with the USPTO in early August 2021. Prezerv incurred and paid fees and expenses to the patent counsel.

**IV.    Prezerv Terminates Defendants, and Defendants Steal Prezerv's Trade Secrets**

34.     On or about July 16, 2021, Raufi explained on a video conference call to Morari and Domeniconi that Raufi was not satisfied with their progress on developing Prezerv's prototype product. Raufi reminded them that Prezerv's business plan contemplated that Prezerv would complete the prototype product before seeking funds from outside investors. Morari insisted that Prezerv should not wait to raise funds, but should instead proceed with fundraising by misleading potential investors as to the status of the prototype. Raufi was troubled by and firmly rejected Morari's plan.

35.     On or about July 19, 2021, Raufi and Morari had a telephone conversation in which Raufi expressed his concerns and issues with Morari's performance at Prezerv and with their July 16 discussion. Raufi informed Morari that their relationship at Prezerv was not working out.

11

36.     Shortly thereafter, Morari and Domeniconi began stealing Prezerv's trade secrets and confidential information.  Further, Morari and Domeniconi went to significant lengths to not only try to hide the tracks of their misappropriation but also to destroy much of Prezerv's proprietary data.  However, with the assistance of digital forensics, Defendants instead laid a trail of digital breadcrumbs leading directly towards their malfeasance.  Many of the facts that follow come from early forensic analysis of various devices and data and are supported by the affidavit of digital forensics expert Mark Spencer.  (Ex. 5 ("Spencer Aff.").)

37.     On July 20, 2021, Raufi informed Morari in person that he intended to terminate him from Prezerv.

38.     By July 21, 2021, Defendants were working to steal or otherwise destroy Prezerv's trade secrets.  As detailed below, Domeniconi was searching Google on this day for "github remove old commits permanently." (Spencer Aff. ¶ 13 and cited exhibit.)  GitHub is an online software development platform Prezerv was using to build its proprietary and confidential software code. A "commit" is an individual revision or change to code on GitHub.  Consequently, if one was to "remove old commits permanently," one would be destroying all history of a code's development, including all iterations of the code.

39.     Prezerv used GitHub to develop and store the code for its machine learning algorithm and the code for its GPR annotation platform. These are core components of Prezerv's technology and valuable intellectual property. If stolen or destroyed, it would disrupt and significantly damage and jeopardize Prezerv's business.

40.     Unbeknownst to Prezerv at the time, Defendants were uploading Prezerv's confidential information and trade secrets to their own personal drives, storage devices, and online accounts. (See Spencer Aff. ¶ 22.)  Forensic analysis shows that Morari was uploading various files to his

12

personal Google Drive that, when retrieved and reviewed by Prezerv, were found to misappropriate Prezerv's own documents, data, and business plans. (Discussed in further detail below.)

41.     The theft and destruction accelerated on July 22, 2021. On that day Raufi terminated Morari's employment, informing Morari by phone around 1PM. Shortly thereafter, Morari logged into Prezerv's Slack account. Slack is an online workspace and collaboration tool, and was used by Prezerv to share confidential documents, centralize cross-functional product development, share funding opportunities, and coordinate the development of its code and other trade secrets.

42.     Around 1:50 PM on July 22, 2021, Morari deleted substantial portions of the communications and other data stored on Prezerv's Slack account, including all critical internal and external "direct message" communications and related attachments and critical portions of the "channels" (dedicated Slack workspaces organized by topics). These deletions included a significant amount of valuable documents and communications concerning Prezerv's GPR data, software development, funding and investment opportunities, proposals and development with Autostrade, Prezerv's business and funding plans, and more.

43.     Minutes later, Morari changed the data retention settings on Prezerv's Slack account to retain data and changes for only one day. This meant on a continuous basis, Slack would automatically and permanently delete Prezerv's Slack data more than 24 hours old. Consequently, by Morari's changing the data retention policy on July 22, all Prezerv's Slack data created on or before July 21 was irretrievably lost (unless Defendants retained a copy for their own misappropriation). Morari's changing the data retention policy caused Slack to send an email alert to Raufi, who quickly signed into Slack and reset the preferences to try to limit any

13

automatic data loss.  Raufi's quick action, however, did not prevent and could not remedy

Morari's actions.  As Raufi would learn from Slack customer service, Morari's multi-step

deletions and changing the data retention settings made it impossible to retrieve any deleted data;

and Morari had deleted data and many discussions related to business plans, Autostrade, and

finances as well as technical files.  By doing so, Morari destroyed the work product that had

taken significant time and effort to create, and which Prezerv would need to re-create to continue

its plans, thereby materially setting back Prezerv's business prospects and growth.

44.     Around 2:29 PM on the same day, Morari logged into Prezerv's GitHub account and

began destroying multiple repositories of Prezerv's software code.  One such repository

contained the code that the Prezerv annotators were using to analyze and label the training data

that Prezerv had spent weeks collecting from the streets of Cambridge.  The labeled data was to

be used to develop Prezerv's proprietary machine learning algorithm.  This training data was

critically important to Prezerv: without it, Prezerv could not continue to develop its algorithm

and code.  Morari's destruction brought Prezerv's business to an immediate halt, and set Prezerv

back months.  Since learning of the deletion, Raufi has diligently been working to retrieve or

restore the annotation platform, but has been unable to undo Morari's destruction.

45.     Raufi took additional reasonable steps on July 22, 2021 to protect Prezerv's confidential

information and trade secrets.  This included revoking Morari's and Domeniconi's access to their

Prezerv Google accounts, to Prezerv's Google cloud platform and to Prezerv's Monday.com

platform.  Unfortunately, these efforts would not be sufficient.  This was in part because

Defendants had already stolen and destroyed much of Prezerv's data, and because Defendants

would refuse to return their Prezerv-issued laptops for almost two months, in breach of their

agreements with Prezerv.

14

46.     The next day, July 23, 2021, Raufi terminated Domeniconi's employment via WhatsApp (online communication service) and asked Domeniconi to return Prezerv's property.  Later in the day Raufi emailed both Morari and Domeniconi with formal written termination notices.  In doing so, Raufi demanded that Morari return all property belonging to Prezerv by the next day, and demanded Domeniconi do so by the following Tuesday.

47.     On July 22, 2021, Raufi informed Garofalo through an online Slack message that Raufi had terminated Morari's employment and requested a meeting with Garofalo.  On July 23, 2021, Raufi and Garofalo met online on Google Meet and Raufi informed Garofalo that he had terminated Morari's and Domeniconi's employment and that Prezerv's annotation platform was not working.  Raufi informed Garofalo that Raufi was attempting to restore the platform and work could resume as soon as that was done.  Raufi also told Garofalo that he would need some time to rebuild Prezerv's technical team.  Garofalo told Raufi that he was interested in continuing his consulting work for Prezerv.

48.     As described in more detail below, after deleting Prezerv's data, code and other valuable property from the GitHub and Slack platforms, Defendants turned their attention to Prezerv's Google cloud platform where Prezerv was also storing its critical data and code on various Google cloud servers. The data and code included raw, processed and annotated GPR data, metadata (inventory of GPR data), workflow management software code, virtual machine code enabling virtual workspaces for remote annotators, and activity logs. On July 28, 2021, Morari and Domeniconi used Dagster service accounts to hack into Prezerv's Google cloud platform despite the fact that Raufi had revoked their access to their Google accounts and the Google cloud platform on July 22, 2021. As with the data on GitHub, the data and code on the Google

15

cloud servers were all core components of Prezerv's development and valuable intellectual property, and Defendants, knowing that these were the only copies, deleted all of them.

## V.   Defendants Refuse to Return Prezerv's Property, Stalling While Their Misappropriation Continues

49.     As of July 30, 2021—one week after the termination notices were sent—Morari and Domeniconi still had yet to return Prezerv's devices, including laptops.  Raufi reminded Morari of this requirement via email.  On this same day, Raufi sent Morari a forfeiture notice pursuant to the Stock Agreement.  Through that notice, Raufi explained that due to Morari's termination, Morari had forfeited a number of shares of Prezerv stock.  Raufi also reminded Morari of his obligations under the Confidentiality Agreement, including the need to return all property belonging to Prezerv—including any code.

50.     On August 23, 2021, Raufi told Garofalo by email that Raufi was working on another component of the Prezerv platform and that Raufi would like to ask Garofalo a few questions about it. On August 24, 2021, Garofalo responded to Raufi by email that he is "currently working on a huge project and planning to go to Italy" and cannot find time to talk to Raufi. Raufi would come to learn that Garofalo's "huge project" was, in fact, Solidium.

51.     Almost a month after their terminations, neither Morari nor Domeniconi had returned any property to Prezerv.  Raufi once again reminded Domeniconi of the need to return everything belonging to Prezerv in his possession via a WhatsApp (online communication service) message on August 17, 2021.  Domeniconi did not immediately respond.

52.     Instead of responding to Raufi and/or returning Prezerv's property, Morari and Domeniconi were retaining legal counsel.  On August 24, 2021, Morari signed an engagement letter with Ellenoff Grossman & Schole LLP for the purpose of receiving "general corporate" and intellectual property advice.  The engagement was not for Morari and Domeniconi as

16

individuals, however, but for a company named "Solidium AI." As Prezerv would come to learn, Solidium was the company that Morari and Domeniconi had created and were using Prezerv's own confidential information and trade secrets to give an improper "head start."

53.    On August 27, 2021, Morari and Domeniconi finally responded by a letter. While the letter did not carry their new law firm's letterhead, it read as though prepared for them by their lawyer. But instead of returning Prezerv's property or even acknowledging their deletion of Prezerv's Slack data, Morari and Domeniconi demanded refund of $18,000.00 contributed to Prezerv, contested the calculation of shares that had vested to Morari, and represented that Prezerv's property would be returned sometime after September 3, 2021—itself one week away, and over a month since Morari's and Domeniconi's terminations.

54.    Prezerv replied on September 2, 2021. In a letter from its own outside counsel, Prezerv provided notice that Morari forfeited all his Prezerv shares pursuant to §2(f) of the Stock Agreement. Under that provision, any misconduct by Morari caused his forfeiture of all Prezerv stock—vested or otherwise. For proof of misconduct, Prezerv pointed to Morari's deletion of Prezerv's Slack data and failure to return Prezerv's property (including devices and data) despite repeated requests. (Prezerv was not yet aware of Morari's much more extensive theft and deletion of Prezerv property, including software code and data in Prezerv's Google cloud and GitHub repositories.)

55.    Prezerv's letter went on to notice potential claims against both Morari and Domeniconi and directed them to preserve all documents, data, and other things within their custody or control relating to such claims—including metadata. The letter also renewed Prezerv's demand that Morari and Domeniconi immediately return Prezerv's property.

56.     Finally, the letter requested Morari and Domeniconi sign a certification that they had abided by the terms of the Confidentiality Agreements, had returned all of Prezerv's property, that they did not retain any copies of Prezerv's data, that they would not engage in any conduct violating their obligations to Prezerv, and that they had not used or disclosed any of Prezerv's confidential information and trade secrets outside of Prezerv.  The proposed certification specifically identified any data housed on IBM servers.  As noted above, Morari had informed Raufi that Domeniconi was using IBM's research cloud servers for some of his Prezerv work. Despite Raufi's direction that Domeniconi stop using IBM's servers for Prezerv work, Prezerv is not certain if Domeniconi followed Raufi's direction.  Because Morari and Domeniconi were still full-time employees of IBM while they worked part-time for Prezerv, Prezerv had reason to suspect that they were using IBM resources including IBM servers for Prezerv work and to store Prezerv data.  Considering the importance of Prezerv's confidential information and trade secrets to its developing business, these were reasonable requests to make to ensure the protection of the same.

57.     A week later, on September 8, 2021, Morari's and Domeniconi's counsel responded. Their counsel did not deny or otherwise rebut the facts of Prezerv's letter, but instead requested copies of documents (e.g., the Stock Agreement and Confidentiality Agreements) already in Morari's and Domeniconi's possession.  Nor did this letter provide the signed certifications requested by Prezerv.  As such, this letter was little more than a blatant stall tactic.

58.     Wasting no time, Prezerv responded by email the following day, September 9, 2021, providing the requested documents and demanding—again—that Morari and Domeniconi immediately return Prezerv's property, as they had yet to return *any*.

18

59.     Morari's and Domeniconi's counsel replied by letter the next day, September 10, 2021, stating Morari and Domeniconi would return "their laptops and the computer code at issue" via Federal Express package being sent the next day and asserting that Defendants had no other property belonging to Prezerv in their possession.  No certifications signed by Morari and Domeniconi were provided confirming that this represented the entirety of Prezerv's property in their possession, that they had not violated and would not violate their obligations to Prezerv, or that they had not disclosed Prezerv's confidential information and trade secrets to anyone outside of Prezerv.

60.     Unbeknownst to Prezerv, Defendants were using this time—between the September 8, 2021 letter from their counsel and the ultimate return of the laptops on September 14, 2021—to continue their ongoing theft of Prezerv's confidential information and trade secrets, as well as their efforts to destroy all evidence of doing so.  This theft and cover-up efforts, and the forensic analysis required to uncover them, is detailed below.

61.     On or about September 14, 2021, Prezerv received the Federal Express package, which included two laptops, two hard drives, power chargers, and a letter dated September 13, 2021. The letter, signed by Morari and Domeniconi but not under the pains and penalties of perjury, stated that the laptops and drives "include all Prezerv Technologies' data and code in our possession" and that "there are no other copies of the code or the data outside the ones shipped." As Prezerv would soon learn, this was not true.

62.     Shortly after receiving the laptops and the hard drives, Prezerv provided them to a forensics expert for preservation and analysis.  At no time between receiving the laptops and drives and providing them to the forensics expert did Prezerv turn on, boot up, access, tamper with or otherwise take any action that could alter, manipulate, or corrupt any of the data on the

laptops or drives. Instead, Prezerv took efforts to ensure that the forensics expert received the laptops and drives in the exact same state as they had been returned by Defendants.

63.     On October 4, 2021, Defendants formed a company named "Solidium AI, Inc." by filing a Certificate of Incorporation with the Delaware Division of Corporations. (See Ex. 6.)

## VI.     Expert Forensic Analysis Recovers Proof of Defendants' Trade Secret Theft

### A.     Defendants' Extensive Spoliation of Evidence

64.     Initial analysis of Morari's and Domeniconi's laptops and drives suggested that both had been wiped clean of data—or that someone had at least tried to wipe them clean of data. Consequently, Prezerv needed to perform forensic analysis to comprehend the extent of Defendants' misdeeds and coverup of the same. (See generally, Spencer Aff.) That analysis returned a significant volume of suspicious activity. (Spencer Aff. ¶ 7.)

65.     Forensics found that Defendants had begun online research how to destroy Prezerv's data and conceal the facts of the same as early as July 21, 2021. (Spencer Aff. ¶ 12.) On that day, Domeniconi's laptop was used to search for "github remove old commits permanently," the importance of which is explained above, and "Google cloud recovery deleted virtual machine," which suggests the Defendants were doing due diligence to ensure their deletion efforts were permanent.

66.     However, it was between September 8, 2021 (the date of the first letter from Defendants' counsel) and September 14, 2021 (the date the laptops were ultimately returned) that Defendants increased their efforts to purposefully spoliate evidence of their misappropriation:

a. On September 8, 2021, Morari's laptop was used to search for "how to remove all tracks of hacking." (Spencer Aff. ¶ 12.)

b. On September 11, 2021, Defendants engaged in a significant amount of deletion activity. (Spencer Aff. ¶ 11, 13.) This included deleting the user profiles they

had used on the laptops for months, and creating new, sham user accounts in an attempt to destroy and/or hide all of their user activity on the laptops to date. (See Spencer Aff. ¶ 11.)

c.  Data retrieved from the laptops further shows that Defendants were attaching and accessing data on external drives at this time. (Spencer Aff. ¶ 16-34 and cited exhibits.) For example, shortly before 2PM on September 11, 2021, a Western Digital Elements external drive was connected to Morari's laptop. Starting twenty minutes later, Dagster-related data was being accessed on the external drive. (Spencer Aff. ¶ 21 and cited exhibit.) Dagster is a data orchestrator for machine learning, and was used by Prezerv to develop its algorithm. Analysis identifies two external hard drives being used with Morari's laptop—the aforementioned Western Digital Elements and a "SMI USB DISK 1100." Defendants did not provide either of these hard drives to Prezerv, despite this evidence that strongly suggests them containing copies of Prezerv's confidential information and trade secrets. (Spencer Aff. ¶ 17, 23.)

d.  Further, at 2:13PM on September 11, 2021, Defendants surgically deleted two specific code files: purge_project.py and purge_project.yaml. (Spencer Aff. ¶ 15.) These code files included language that could delete all of Prezerv's data pipeline across multiple repositories. The presence of these code files is suspicious, and its surgical deletion prior to the general wipe conducted an hour later even more so, as it infers that Defendants knew this code could be a "smoking gun." Analysis of this code and why it was present on the laptops is ongoing.

e.  Later on September 11, 2021, Defendants searched the internet for "eraser" then ran setup files for "Heidi Eraser." (Spencer Aff. ¶ 10.) Heidi Eraser is an advanced security tool that allows a user to completely remove sensitive data from a hard drive. (Spencer Aff. ¶ 8.) By running Heidi Eraser on the laptops,

Defendants caused permanent and significant damage to the metadata frequently used to identify data theft. (Spencer Aff. ¶ 9.) Despite Defendants' efforts to hide their tracks, Prezerv's forensic experts were largely able to recover proof of Defendants' misdeeds because Defendants failed to empty their "Recycle Bin" on Morari's laptop. (Spencer Aff. ¶ 14.) Shortcut analysis shows that Defendants ran Heidi Eraser not long after their use of the Western Digital Elements external hard drive discussed above. (Spencer Aff. ¶ 18, 21 and cited exhibits.)

67.    Forensic analysis of Domeniconi's laptop provides further evidence of both the digital theft and efforts to cover up the same. In late August, Domeniconi was accessing the GPR data Prezerv had worked hard to collect. In early September, Domeniconi was also connecting external hard drives to the laptop—likely to export data for future use—and shortly thereafter accessed files related to Prezerv's trade secrets and efforts, including GPR data. (See generally, Spencer Aff.)

68.    The cumulative effect of these facts demonstrates that Defendants were taking measures to transfer Prezerv's confidential information and trade secrets to repositories such as the above-mentioned external hard drives, then taking steps to destroy any trace of the data itself and their efforts to abscond with it from the laptops.

### B.    Defendants' Brazen Misappropriation of Prezerv's Confidential Information and Trade Secrets

69.    In addition to the evidence of Defendants' attempts to cover their tracks and otherwise purposeful spoliation, the forensic experts were also able to retrieve many of the documents that had been kept on Morari's laptop and which Defendants had attempted to destroy. These documents demonstrated how Defendants were working against Prezerv's interests and misappropriating Prezerv's confidential information and trade secrets to give their own company, Solidium, an improper head start.

70.    Many of the documents retrieved referenced "Solidium.AI" – the same company recently incorporated in Delaware. One, titled "Milestones and Fundraising Plan," identified Morari as

22

Solidium's CEO, Domeniconi as CTO, and Garofalo as Head of Geophysics. It also described Solidium's goal as the development of a platform using GPR, Lidar, and HD images to assess the health of civil infrastructure—just like Prezerv. Many of the descriptions in the document described the platform and technologies being developed by Prezerv, including those Prezerv had been negotiating to develop with and provide to Autostrade, and others are clearly drawn from communications with Autostrade or various Prezerv grant applications. It also referenced the collection of 800+ miles of GPR data—which was the data *Prezerv* spent time and money collecting from the streets of Massachusetts. But perhaps most striking of all, the section of the document titled "Project Status" states that "The Project started in *November 2020"* (emphasis added) -- during the early stages of Morari's and Raufi's discussions about launching Prezerv. The section goes on to list Solidium's discussions with Autostrade, the collection of GPR data and three additional technical milestones that "we" [Solidium] completed. In fact, the technical milestones were (allegedly) completed while the Defendants were working for Prezerv. The document's reference to "November 2020" could mean only one of two things: The first is that, since those early discussions and the entire time he was working at Prezerv, Morari was simultaneously scheming to develop a competing business using Prezerv's trade secrets. The second is that Morari and the other Defendants conspired to hatch this scheme some time later, but decided to date the beginning of their scheme back to Morari's early discussions with Raufi. In either case, the Defendants' whitewashing of Prezerv's existence (and thereby defrauding prospective investors in Solidium who receive this Solidium fundraising document) and theft of Prezerv's trade secrets are violations of their Confidentiality Agreements, Morari's Stock Agreement, fiduciary duty, and good faith.

71.     Solidium's "own" pitch deck -- a document used to promote or "pitch" a company's business to prospective investors, business partners and customers -- also contains many elements taken directly from Prezerv's pitch deck. Some pages contain identical text and similar graphics and layout as Prezerv's, the only changes being cosmetic (e.g., changing green background to blue). Solidium's deck goes so far as to identify a project with Autostrade as a

key indicator of Solidium's "traction" in the market, using the exact same language used by Prezerv in its own deck.



**Fig. 1**

(Left: Slide from "SolidiumAI-pitchdeck." Right: Slide from Prezerv's pitchdeck.)

72. Another set of documents appear to be evolving drafts that Defendants were preparing for their own patent counsel for the purpose of preparing a patent application. But these "Solidium" documents misappropriated information from Prezerv documents that Prezerv had marked and treated as confidential. Specifically, these "Solidium" files, with titles including "SolidiumAI_patent_Bart," "Solidium-patents-all," and "SolidiumAI_patents-all," included language directly copy and pasted from Prezerv's internal documents referenced above describing ideas for potential patent applications Prezerv had submitted to Prezerv's patent counsel and from submissions to above-described MassChallenge, the NIST, and the NSF programs, all of which were labeled "confidential" material of Prezerv. Some of these "Solidium" files even *included photographs of Raufi posing with scanning equipment used by Prezerv*, and directly referenced *Prezerv*. For example, one such "Solidium" document states how "*Prezerv* invented…" and "The following picture depicts . . . the *Prezerv* approach." (Emphasis added.) Later drafts of these documents show "Prezerv" being replaced with "Solidium." Further, the retrieved files show that many of these documents had been previously

24

saved with "Prezerv" in their file name, only to have the reference to Prezerv replaced with "Solidium,"—just as the company names were swapped in the in-document text.



**Fig. 2**

(Screenshot from "Solidium-patents-all."  Note language re: "Prezerv invented," "the Prezerv approach," and "Prezerv Technologies-CONFIDENTIAL."  Mr. Raufi is pictured in the photograph in the lower right.)



**Fig. 3**

(Screenshot from "SolidiumAI_patent."  Note how the graphics now reference Solidium—but still draw from Prezerv's pitchdeck—and how the text still directly references Prezerv.)

25

73.     This "cut-and-paste" theft of Prezerv's trade secrets more likely than not occurred

between mid-July, when Raufi informed Morari of his imminent termination, and mid-

September, when Prezerv's laptops were finally returned.  Forensic analysis of Morari's laptop

demonstrates that, during that time, Morari was busy hacking into and accessing a variety of

confidential documents.  For example, on August 4, 2021, Morari accessed Prezerv's pitch deck

and, two days later, accessed a number of documents concerning the negotiations with

Autostrade.  On August 14, 2021, Morari was drafting a document titled "TO-DO" that he kept

in a folder titled "Solidium" and which included, among other things, a plan for pursuing both

business from Autostrade and a variety of patents.  On August 25, 2021, Morari accessed

documents concerning Prezerv's patent application.  (Spencer Aff. ¶ 18 and cited exhibit.)

74.     Data retrieved from Morari's laptop also shows that he had created a folder titled

"Solidium."  The documents he kept in that folder included "**Prezerv**-MC-pitchdeck-

v5logo.pptx," "**Prezerv**-MC-pitch.pptx," and "**Prezerv**-patents-all.doc."  (Emphasis added.)

Morari's "Solidum" folder was therefore full of Prezerv's confidential information and trade

secrets.

### VII.    Defendants' Continued Attempts to Spoliate Evidence

75.     On October 6, 2021, Raufi received further notice of Defendants' attempts to destroy

Prezerv's data and hide their tracks of doing so.  On that day, Raufi received an email from

GitHub warning him of an attempt by someone using Morari's credentials to access Prezerv's

GitHub account.  The attempted hack was unsuccessful because the person trying to log in (most

likely Morari) was using an unrecognized device.  This triggered a "Please Verify Your Device"

email to be sent to Morari's email account at Prezerv, which was re-directed to Raufi.  Fearful

that Morari was attempting to steal or destroy more of Prezerv's data, Raufi quickly signed into

Prezerv's GitHub account and reset the password for Morari's account to ensure Morari would

be locked out.

76.     It was at this time that Raufi became aware of Defendants' deletion of Prezerv's GitHub

data.  Raufi first discovered that multiple repositories and the data kept therein were simply

missing from the platform. Raufi then reviewed the Security Log for Morari's GitHub account, which expressly showed that Morari had logged into GitHub in July 2021 and deleted multiple repositories. Raufi attempted to recover the deleted data, but GitHub only allowed restoration of deleted repositories for 30 days after their deletion. This meant that, due to Defendants' efforts to destroy Prezerv's data, this data was lost to Prezerv, unless Defendants retained a copy for their own misappropriation.

> **aleprezervtech – repo.destroy**
> Deleted the repository prezervtech/utilsim
> 38.13.9.31    Revere, Massachusetts, United States    on Jul 23

> **aleprezervtech – repo.destroy**
> Deleted the repository prezervtech/gpr_segmentation
> 38.13.9.31    Revere, Massachusetts, United States    on Jul 23

**Fig. 4**

(Excerpt from GitHub Security Log showing Morari's deletion of repositories.)

77.    On information and belief, Morari and Domeniconi continue to work with Garofalo to develop Solidium. This is supported by the Solidium pitch deck and other materials retrieved from Morari's and Domeniconi's laptops that identify Garofalo as one of Solidium's team members. This is despite the non-solicitation and other provisions present in the Confidentiality Agreements signed by all three of these Defendants. Unlike Morari and Domeniconi who used Prezerv-issued laptops for their Prezerv work, Garofalo used his own computer for his Prezerv work. Accordingly, Prezerv has not yet been able to perform a forensic audit on Garofalo's computer to verify exactly what Prezerv trade secrets Garofalo copied and destroyed with his computer.

27

**VIII.** **Continued Investigation by Prezerv Discovers Further Efforts by Defendants to Destroy Prezerv's Confidential Information and Trade Secrets**

78.     Being put on high alert by the results of the forensic analysis, Prezerv has conducted, and continues to conduct, investigation into the theft and destruction of its data by Defendants. As more evidence is found, Prezerv worries that it has only scratched the surface and does not yet know the full extent—or repercussions—of Defendants' illegal actions. Prezerv's recent discoveries are summarized below.

79.     There is no longer any record of Prezerv's work product or data on the Monday.com cloud platform. Prezerv has contacted Monday.com's customer service in attempt to secure an activity log, but it appears that all of the actual work product on the site has been destroyed.

80.     Prezerv's work on Google's cloud platform was saved in a workflow titled "Platform." That workflow still exists in Raufi's account (albeit empty, the data having been deleted by Defendants), but no longer appears in Morari's or Domeniconi's Prezerv-issued accounts. Further, the activity logs for Morari's and Domeniconi's accounts have been wiped out, destroying evidence of what they did and when they did it.

81.     The audit log for Prezerv's Google cloud platform shows that Morari and Domeniconi used Dagster service accounts as a "back door" to hack into the Google cloud platform on July 28, 2021—subsequent to their terminations from Prezerv and six days after Prezerv had revoked their access to their Prezerv Google accounts and to the Google cloud platform. When doing so, Morari and Domeniconi accessed data storage buckets, deleted computational disks, and deleted activity logs. Morari additionally attempted to delete the audit log, which would have spoliated evidence of these other acts, but Google denied the request per its policy.

82.     Analysis of the disk usage data for Prezerv's Google cloud servers showed no data prior to September 17, 2021. This strongly suggests deletion by Defendants, because Prezerv's annotators were busy annotating Prezerv's GPR data for months during that time period, which should have been reflected in these reports. Instead, the reports simply state "No data is available for the selected time frame[s]."

83.    All activity on Prezerv's "Postgres" server on the Google cloud platform has been erased.

84.    Additional reports strongly suggest that Defendants continued to try to hack into Prezerv's Google-hosted data, and even synchronize their devices with the repositories. Prezerv has taken action, and continues to take action, to quash these attempts.

85.    Prezerv is continuing to analyze the external hard drives Defendants returned to Prezerv. The drives appear to contain some of Prezerv's workflow management software code, but they do not contain the critical elements of the code thereby rendering useless the returned code.

## IX.    Defendants Have Caused Considerable, Irreparable Harm to Prezerv

86.    Defendants have caused considerable harm to Prezerv, which will be irreparable if allowed to continue. This includes but is not necessarily limited to the deletion of Prezerv's Slack data, GitHub data, Google cloud data, GPR data, and code; all of which constituted confidential information and trade secrets, all of which required significant effort and resources for Prezerv to develop, and all of which is essential to Prezerv's on-going development. Defendants' destruction of this data has caused and continues to cause months of delay and wasted resources.

87.    Further, by retaining and misappropriating Prezerv's data, code, business plans, patent application material, and other documents—all of which constitute confidential information and trade secrets—Defendants are giving themselves an improper head start to their own business.

88.    Additionally, there is the harm caused by the Defendants failure to their fiduciary duties and duties of good faith and fair dealing while employed by Prezerv when they simply failed to do the job they were hired to do. Prezerv relied on Defendants to complete work that should have taken significantly less time than that used by Defendants. This alone caused Prezerv to suffer months of delay and wasted resources.

89.    This has all caused a disruption of Prezerv's relationships with prospective customers, investors and business partners, and the usurpation of Prezerv's goodwill with prospective customers, investors, and business partners. It has caused or risked the disclosure of Prezerv's proprietary trade secrets. Defendants' formation of Solidium and attempts to misappropriate

Prezerv's trade secrets jeopardizes Prezerv's business opportunities and reputation. All of this presents an economic loss which is unascertainable at this time and may never be ascertainable, as well as future economic loss which is also presently incalculable.

90.     Further, Defendants continue to use and attempt to profit from their misappropriation of Prezerv's confidential information and trade secrets. First, data retrieved from Defendants' laptops demonstrates Defendant's intent to not only pursue investment and funding, but also to pursue a patent—all based upon Prezerv's confidential information and trade secrets. Second, on information and belief, Defendants have already approached Y Combinator, a technology startup accelerator that has helped launch many prominent companies, and would likely have interest in funding Prezerv. By misappropriating Prezerv's confidential information and trade secrets and using them to entice Y Combinator, Defendants are causing irreparable harm to Prezerv and diminishing any chance for it to do the same.

## COUNT I

### Misappropriation of Trade Secrets in Violation of MGL ch. 93 § 42 *et seq.*

91.     The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

92.     Massachusetts' trade secret law, revised effect in 2018, explicitly protects not only information that provides "actual" economic advantage, but also information that has "potential" economic advantage. In other words, a plaintiff does not need to prove that the protected trade secret is currently in use, only that it has potential economic value. Moreover, a plaintiff may now seek an injunction not only for "actual", but also for "threatened" misappropriation of trade secrets.

93.     Prezerv's data, business plans, code, and other trade secrets constitute "trade secrets" as defined under Mass. Gen. Laws Ann. ch. 93, § 42.

94.     Defendants' theft of Prezerv's trade secrets, unreasonable intrusion into Prezerv's various data repositories (including after their termination), and any attempt to reverse engineer code, data, business plans, or other materials for use by Solidium from Prezerv's trade secrets and

confidential information constitute "improper means" as defined under Mass. Gen. Laws Ann. ch. 93, § 42.

95.     Defendants' acquisition of Prezerv's trade secrets and confidential information constitutes "misappropriation" as defined under Mass. Gen. Laws Ann. ch. 93, § 42.

96.     At the time of Defendants' misappropriation, Prezerv's trade secrets and confidential information provided economic advantage, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, others who might obtain economic advantage from its acquisition, disclosure, or use.

97.     At the time of Defendants' misappropriation, Prezerv's trade secrets and confidential information were the subject of efforts that were reasonable under the circumstances, which may include reasonable notice, to protect against it being acquired, disclosed, or used without the consent of the person properly asserting rights therein or such person's predecessor in interest.

98.     Defendants' misappropriation was and is a substantial factor directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv continues to suffer irreparable harm due to Defendants' actions.  Prezerv is therefore entitled to injunctive relief as provided under Mass. Gen. Laws Ann. ch. 93, § 42A, prohibiting any use or potential use of Prezerv's trade secrets by Defendants.

99.     Prezerv is entitled to damages as provided under Mass. Gen. Laws Ann. ch. 93, § 42B, including damages related to the actual loss caused by Defendants' misappropriation and any unjust enrichment to Defendants caused by their misappropriation.  Further, because Defendants' misappropriation was and continues to be willful and malicious, exemplary damages are warranted.

100.    Prezerv is entitled to attorneys' fees as provided under Mass. Gen. Laws Ann. ch. 93, § 42C, as Defendants' misappropriation was and continues to be willful and malicious.

## COUNT II

### Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act

101.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

102.    The Defend Trade Secrets Act ("DTSA") was passed into law on May 11, 2016, and amends chapter 90 of Title 18 of the U.S. Code. It forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate of foreign commerce."

103.    "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information." As described above, certain confidential and proprietary information of Prezerv constitutes trade secrets related to a product or service used in, or intended for use in, interstate commerce, including but not limited to information regarding Prezerv's data, code, and business plans.

104.    Prezerv takes reasonable measures to protect the secrecy of such information.  These measures include password-protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis.

105.    Defendants Morari, Domeniconi, and Garofalo knew that they had a duty to maintain the secrecy of Prezerv's confidential information and trade secrets, in part, by signing their Confidentiality Agreements.

106.    The Confidentiality Agreements also specifically referenced the DTSA, and provided Defendants notice of the whistleblower immunity provided by the DTSA.

107.    On information and belief, as described above, all Defendants engaged in a scheme to misappropriate Prezerv's trade secrets.

108.    On information and belief, the Defendants have used Prezerv's confidential proprietary information and trade secrets for their benefit, or for the benefit of another party, without Prezerv's consent or authorization and in a manner that will cause irreparable harm to Prezerv.

109.    Defendants' actions constitute actual and continuing misappropriation in violation of the DTSA.

110.    Prezerv has suffered damages and irreparable harm as a result of Defendants' breaches of the DTSA.

111.    Prezerv is entitled to actual damages from Defendants and for attorneys' fees.

112.    Prezerv's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

113.    Defendants' actions will continue to cause irreparable harm and damages to Prezerv and its confidential and trade secret information if not restrained.

## COUNT III

### Misappropriation of Trade Secrets – CFAA

114.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

115.    Prezerv's laptops, GitHub platform, Slack platform, and Google cloud servers are all systems used in or affecting interstate commerce or communication and either used to access the internet or used through the internet.  Prezerv's laptops are "protected computers" within the meaning of the Computer Fraud and Abuse Act ("CFAA").

116.    On information and belief, Defendants violated the CFAA when they, knowingly and with intent, intentionally accessed Prezerv's laptops, GitHub platform, Slack platform, and Google cloud servers without authorization and/or in excess of their authorization, and after their termination from Prezerv, including when they took, without authorization, Prezerv's valuable confidential and proprietary information and used it for their own benefit.

117.    Prezerv has suffered damages and/or loss by reason of Defendants' actions in violation of the CFAA.

118.    Pursuant to the CFAA, Prezerv is entitled to recover damages against Defendants.

119.    Prezerv seeks recover to the full extent permitted by the CFAA, including but not limited to loss aggregating at least $5,000 in value, including the cost of responding to and investigating

the misappropriation of Prezerv's trade secrets and the destruction of Prezerv's data on its laptops, GitHub platform, Slack platform, and Google cloud servers and related costs.

120.    Pursuant to the CFAA, Prezerv is entitled to temporary and permanent injunctive relief enjoining Defendants from making any further use of Prezerv's valuable confidential and proprietary information and requiring the return of all documents and things containing of embodying such information.

<u>**COUNT IV**</u>

**Misappropriation – Common Law**

121.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

122.    Prezerv owns confidential and proprietary information as described herein.

123.    Defendants were provided with access to the confidential and proprietary information owned by Prezerv in the course of their employment and in the case of Garofalo, his consultancy. Defendants continued to improperly and without authorization access that confidential and proprietary information after their termination.

124.    Defendants were and are obligated to maintain the confidentiality of the confidential and proprietary information they received from or had access to in the course of their employment with Prezerv or in the case of Garofalo, his consultancy with Prezerv, and are not permitted to use or disclose this information for their own benefit, or for the benefit of any third party.

125.    Defendants misappropriated the confidential and proprietary information they received from or had access to while employed or engaged by Prezerv by taking it from Prezerv without Prezerv's consent or authorization.

126.    Defendants have used Prezerv's confidential proprietary information for their benefit, or for the benefit of another party, without Prezerv's consent or authorization and in a manner that will cause irreparable harm to Prezerv.

127.    By reason of their wrongful conduct, Defendants have misappropriated the confidential and proprietary information they received from Prezerv in violation of the common law.

34

128.    Prezerv is informed and believes, and thereupon alleges, that Defendants acted willfully and maliciously.

## COUNT V

### Breach of Contract – Confidentiality Agreements

129.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

130.    Defendants Morari, Domeniconi, and Garofalo entered into Confidentiality Agreements with Prezerv.

131.    The Confidentiality Agreements are enforceable contracts between these Defendants and Prezerv.

132.    Morari, Domeniconi, and Garofalo materially breached the Confidentiality Agreements as described above and, specifically, by taking, misappropriating, using, and/or disclosing Prezerv's confidential information and trade secrets, failing to return Prezerv's devices and data upon their termination, and/or failing to return Prezerv's devices and data upon demand.

133.    Morari and Domeniconi further breached the Confidentiality Agreements to the extent they employed, solicited, induced, or otherwise influenced Garofalo to join Solidium or otherwise compete with Prezerv.

134.    Prezerv expects to learn of additional breaches of the Confidentiality Agreements during discovery and reserves its rights to recover for any additional breaches.

135.    Defendants' breaches of the Confidentiality Agreements are and is a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.  Prezerv is therefore entitled to injunctive relief as set forth in §8.1 of the Confidentiality Agreements.

136.    Prezerv is further entitled to repayment of all costs incurred by Prezerv in its efforts to enforce the Confidentiality Agreements and protect its confidential information, including reasonable attorneys' fees, as set forth in §8.1 of the Confidentiality Agreements.

## COUNT VI

### Breach of the Implied Covenant of Good Faith and Fair Dealing

137.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

138.    The Confidentiality Agreements and Stock Agreement are contracts existing between Prezerv and Defendants Morari, Domeniconi, and Garofalo.  Each included an implied covenant of good faith and fair dealing under Massachusetts law.

139.    Defendants Morari, Domeniconi, and Garofalo acted in bad faith and with an improper motive as described herein, in breach of that implied covenant.

140.    The actions of Defendants Morari, Domeniconi, and Garofalo violate the reasonable and justifiable expectations of Prezerv under the terms of those agreements and have the effect of injuring Prezerv's rights to receive the fruits of those agreements.

141.    Defendants' breaches have been and continue to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.

## COUNT VII

### Breach of Fiduciary Duty

142.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

143.    Defendants Morari and Domeniconi occupied positions of trust and confidence at Prezerv and were required to protect Prezerv's interests.  These Defendants owed a fiduciary duty to Prezerv, including, among other things, a duty of loyalty and duty of care.

144.    Notwithstanding these duties, these Defendants willfully and intentionally breached their fiduciary duties by destroying, taking, misappropriating, and using Prezerv's confidential information and trade secrets without Prezerv's consent or authorization.

36

145.    Defendants' breaches have been and continue to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.

## COUNT VIII

### Conversion

146.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

147.    Defendants wrongfully exercised dominion and control over Prezerv's property, confidential information, and trade secrets by failing to return the same and by converting the same for their own use without legal justification, authorization, or privilege.

148.    Defendants' conversion has been and continues to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.

## COUNT IX

### Tortious Interference with Advantageous Business Relations

149.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

150.    The Defendants knew or should have known that Prezerv had an advantageous business relationship with Autostrade.

151.    By the improper means of misappropriating Prezerv's confidential information and trade secrets, as well as deleting or otherwise destroying Prezerv's data and code, Defendants have interfered with Prezerv's relationship with Autostrade.

152.    Prezerv has suffered damages as a result of Defendants' interference with Prezerv's relationship with Autostrade, including but not limited to reputational harm and increased costs and delays arising from Defendants' destruction of Prezerv's data and code.

153.    Defendants' tortious interference has been and continues to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.

## COUNT X

### Unjust Enrichment

154.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

155.    By virtue of their theft of Prezerv's confidential information and trade secrets, Defendants have received a benefit.

156.    Defendants have profited from their possession of Prezerv's confidential information and trade secrets by using that information for their own pecuniary benefit, including using that information to further the interests and efforts of their own competing company, Solidium.

157.    As a result of their actions, Defendants have been unjustly enriched to the detriment of Prezerv.

158.    Defendants' actions have been and continue to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.

## COUNT XI

### Breach of Contract – Stock Agreement

159.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

160.    Defendant Morari entered into a Stock Agreement with Prezerv.

161.    The Stock Agreement is an enforceable contract between Morari and Prezerv.

162.    Morari materially breached the Stock Agreement as described above and, specifically, by destroying, taking, misappropriating, using, and/or disclosing Prezerv's confidential information and trade secrets, failing to return Prezerv's property such as data, software code and laptops upon his termination, and failing to return Prezerv's property upon demand.  Morari further

38

breached the Stock Agreement to the extent he employed, solicited, induced, or otherwise influenced Garofalo to join Solidium or otherwise compete with Prezerv. These acts constituted "Misconduct" as defined in the Stock Agreement.

163.    Prezerv expects to learn of additional breaches of the Stock Agreement during discovery and reserves its rights to recover for any additional breaches.

164.    Morari's "Misconduct" constituted a breach of the Stock Agreement and is a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv. Prezerv has been and continues to be irreparably harmed by Morari's actions.

165.    Pursuant to the Stock Agreement, and due to his "Misconduct," Morari has forfeited all shares in Prezerv he would otherwise have claim to, including those already vested.

## COUNT XII

### Civil Conspiracy

166.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

167.    Defendants knowingly participated in a tortious plan and concerted action to misappropriate and destroy Prezerv's confidential information and trade secrets, including its data, code, and business plans, as well as to interfere with Prezerv's advantageous business relations and breach the numerous duties and contractual terms referenced above.

168.    Defendants' actions have been and continue to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv. Prezerv has been and continues to be irreparably harmed by Defendants' actions.

## COUNT XIII

### Violation of MGL ch. 93A § 11

169.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

170.    Prezerv is a "person" and engages in "trade or commerce" within the meaning of Mass. Gen. Laws ch. 93A §1.

39

171.    Defendants are "persons" and engage in "trade or commerce" within the meaning of Mass. Gen. Laws ch. 93A §1.

172.    The acts at issue primarily and substantially took place in the Commonwealth of Massachusetts, both because Prezerv operates its principal place of business in Massachusetts and because Morari was a resident of Massachusetts for a portion of the relevant time frame.

173.    The actions of Defendants as set forth above constitute willful and knowing violations of Mass. Gen. Laws ch. 93A §11.  Their wrongful practices include, without limitation, the following:

      a.  Misappropriating Prezerv's confidential information and trade secrets for the purpose of their own competing business;

      b.  Deleting or otherwise destroying Prezerv's confidential information and trade secrets, including but not limited to code and data stored in Prezerv's Google cloud servers, GitHub repository, Slack platform, and laptops; and

      c.  Tortiously interfering with Prezerv's advantageous business relationships with its current and prospective clients and investors.

174.    Defendants' violations of ch. 93A have been and continue to be a substantial factor in directly and proximately causing damages and irreparable harm to Prezerv.  Prezerv has been and continues to be irreparably harmed by Defendants' actions.  Because Defendants' violations have been willful and knowing, Prezerv is entitled to treble damages.

## COUNT XIV

### Declaratory Judgment

175.    The allegations of the preceding paragraphs are hereby incorporated by reference as though fully set forth herein at length.

176.    An actual controversy has arisen between Prezerv and Morari concerning his misconduct and vested shares of Prezerv.  Prezerv asserts that Morari's actions, detailed above, constitute misconduct resulting in the forfeiture of all ownership or interest he may have in any shares of Prezerv.  Morari contests or otherwise ignores Prezerv's position.

40

177.   Declaratory relief will clarify the rights, obligations, and status of the parties, and is, therefore, appropriate to resolve this controversy.

## REQUESTS FOR RELIEF

WHEREFORE, Prezerv requests that this Court award the following relief:

A.   Enter judgment in favor of Prezerv on all Counts in the present Complaint;

B.   Award damages to Prezerv in an amount to be determined at trial;

C.   Award double and/or treble damages to Prezerv where permitted by statute;

D.   Award Prezerv its costs, interest, and attorneys' fees as permitted by the Confidentiality Agreements or otherwise;

E.   Issue an immediate order requiring Defendants to preserve all electronic evidence related to the allegations above;

F.   Issue an immediate order requiring Defendants to cease any and all use of Prezerv's confidential information and trade secrets;

G.   Issue an immediate order requiring Defendants to tender to Prezerv copies of all confidential information and trade secrets, including but not limited to data, code, and business plans taken or copied from GitHub, Slack, Google, Prezerv's laptops, or otherwise;

H.   Issue an immediate order requiring Defendants to destroy all data, code, and business plans derived from Prezerv's confidential information and/or trade secrets;

I.   Issue an order finding Defendant Morari to have engaged in "Misconduct" for purposes of confirming Defendant Morari has all forfeited all shares of Prezerv stock under the Stock Agreement;

J.   Award such other further relief as the Court deems necessary and appropriate.

## JURY DEMAND

Prezerv demands a jury trial on all claims so triable.

Dated: November 9, 2021

## **VERIFICATION**

I, Cambiz Nick Raufi, hereby swear under the pains and penalties of perjury that, to the best of my knowledge and understanding, part of which is reliant upon information provided by others that I believe to be true, all of the foregoing is true and accurate.

11, 9, 2021
_____
Date

_____
Cambiz "Cam" Nick Raufi

42

Respectfully submitted,

PREZERV TECHNOLOGIES, INC.

By its attorneys,

Raymond P. Ausrotas, Esq. (BBO #640315)
RAusrotas@arrowoodllp.com
William F. McGonigle, Esq. (BBO #569490)
wmcgonigle@arrowoodllp.com
ARROWOOD LLP
10 Post Office Square,
7th Floor South
Boston, MA 02109
T: 617-849-6200

43

2

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. 21-2585 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) PREZERV TECHNOLOGIES, INC. | DEFENDANT(S) ALESSANDRO MORARI, GIACOMO DOMENICONI, BARTOLOMEO GAROFALO, and SOLIDIUM AI, INC. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number Raymond P. Ausrotas, Esq. (BBO #640315) / William F. McGonigle, Esq. (BBO #569490) ARROWOOD LLP 10 Post Office Square, 7th Floor South; Boston, MA 02109 T: 617-849-6200 | ATTORNEY (if known) |
|---|---|

Origin Code Original Complaint

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * _____
Breach of Contract _____ (B)☑Yes ☐No

BD.2 claims to determine the use or status of, or claims involving, confidential, property or trade secret information

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

When startup company Prezerv Technologies, Inc. ("Prezerv") hired Defendants Alessandro Morari, Giacomo Domeniconi, and Bartolomeo Garofalo to assist with the development of its innovative and potentially valuable business idea, Prezerv thought it was aligning itself with talented engineers who would contribute to the growth of a promising early-stage business venture.

Instead, Defendants engaged in a malicious, extended, methodical, digital theft of Prezerv's confidential information and trade secrets—and attempted cover-up of the same. As detailed in the Verified Complaint, Defendants not only stole copies of Prezerv's proprietary data, code, and business plans; not only destroyed copies of the same that remained with Prezerv; not only attempted to spoliate evidence of their misdeeds; but misappropriated Prezerv's confidential information for their own benefit by doing little more than replacing Prezerv's name on documents with their own.

Defendants'actions breach multiple agreements between the parties, state and federal statutes, and the common law. Immediate and thorough relief is necessary to make Prezerv whole.

All parties to this action have stipulated to the jurisdiction of the Business Litigation Session for the purpose of these claims.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____
DATE: 11/9/2021

*3*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SECTION

PREZERV TECHNOLOGIES, INC.,

Plaintiff,

v.

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

Defendants.

Civil Action No.



21-2585

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Defendants in this case, who had worked with and been granted access to key

confidential information of the Plaintiff, Prezerv Technologies, Inc. ("Prezerv"), learned that

their relationship with Prezerv was ending and then engaged in a brazen scheme to first

misappropriate, and then use  that information at a new company they created – all while

destroying what was left behind at Prezerv.  These Defendants stole data, code, and business

plans from Prezerv's various repositories, deleted much of those records and data after doing so,

and then shamelessly replaced Prezerv's name on many documents with that of Defendant's

newly created company, Solidium.AI, Inc.  By these actions, along with others detailed in

Prezerv's Verified Complaint, Defendants knowingly and willfully breached a number of

agreements between the parties, including confidentiality agreements that Prezerv had employed

in order to protect its confidential information and trade secrets against just this kind of action.

This egregious misconduct has caused material delay in Prezerv's ability to develop its business

and deliver results to its potential customers (one of which Defendants appear to be attempting to poach from Prezerv) while giving Defendants an improper "head start" on their own competing business. As a result, Prezerv seeks preliminary relief to restore the benefit of its bargain and prevent any further irreparable harm that has and likely will continue to result from the Defendant's wrongful conduct.

Specifically, this Motion seeks to immediately:

1) Cease all solicitation of any of Prezerv's current, former, or potential clients, including but not limited to Autostrade per l'Italia.

2) Cease all solicitation of funding or investment, including but not limited to funding or investment from Y Combinator and/or similar startup accelerator programs.

3) Cease all use of any and all data, code, documents, business plans, communications, or other records taken from Prezerv or derived from any of Prezerv's confidential information or trade secrets, including but not limited to use in any patent application.

4) Return all data, code, documents, business plans, communications, or other records taken from Prezerv.

5) Destroy all copies of all data, code, documents, business plans, communications, or other records taken from Prezerv maintained in any repository to which Defendants have access, be it physical, digital, online, offline, cloud-based, stored on a third-party server (e.g., IBM), or otherwise.

6) Destroy all data, code, documents, business plans, communications, or other records derived from Prezerv's confidential information and trade secrets.

7) Certify compliance with the above within 30 days of an order.

A supporting Memorandum, together with the Verified Complaint of Mr. Cam Raufi,

Prezerv's CEO and President and a Proposed Order, are being filed with the Court

contemporaneously with this Motion, and are hereby incorporated by reference.


Dated: November 9, 2021                          Respectfully submitted,

                                                 PREZERV TECHNOLOGIES, INC.

                                                 By its attorneys,

                                                 /s/ William F. McGonigle_____
                                                 Raymond P. Ausrotas, Esq. (BBO #640315)
                                                 RAusrotas@arrowoodllp.com
                                                 William F. McGonigle, Esq. (BBO #569490)
                                                 wmcgonigle@arrowoodllp.com
                                                 ARROWOOD LLP
                                                 10 Post Office Square,
                                                 7th Floor South
                                                 Boston, MA 02109
                                                 T: 617-849-6200

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT DEPARTMENT
                                                              OF THE TRIAL COURT
                                                BUSINESS LITIGATION SECTION

PREZERV TECHNOLOGIES, INC.,

       Plaintiff,

       v.                                        Civil Case No. _____

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

       Defendants.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

The Defendants in this case, who had worked with and been granted access to key confidential information of the Plaintiff, Prezerv Technologies, Inc. ("Prezerv"), learned that their relationship with Prezerv was ending and then engaged in a brazen scheme to first misappropriate, and then use that information at a new company they created – all while destroying what was left behind at Prezerv. These Defendants stole data, code, and business plans from Prezerv's various repositories, deleted much of those records and data after doing so, and then shamelessly replaced Prezerv's name on many documents with that of Defendant's newly created company, Solidium.AI, Inc. By these actions, along with others detailed in Prezerv's Verified Complaint, Defendants knowingly and willfully breached a number of agreements between the parties, including confidentiality agreements that Prezerv had employed in order to protect its confidential information and trade secrets against just this kind of action.

This egregious misconduct has caused material delay in Prezerv's ability to develop its business and deliver results to its potential customers (one of which Defendants appear to be attempting to poach from Prezerv) while giving Defendants an improper "head start" on their own competing business.  As a result, Prezerv seeks preliminary relief to restore the benefit of its bargain and prevent any further irreparable harm that has and likely will continue to result from the Defendant's wrongful conduct.

## FACTS

The facts supporting this motion are detailed in Prezerv's Verified Complaint, incorporated by reference.  A summary of those facts follows:

Prezerv is a startup company, founded by Cambiz "Cam" Raufi, and developing a software platform to enable the automatic management of civil infrastructure.  (Ver. Compl. ¶¶ 9-14.)  Prezerv invested significant time and resources into collecting and developing its data, code, confidential information, and trade secrets.  (Ver. Compl. ¶¶ 14, 25-33.)  This included requiring its employees, partners, and consultants to execute "Agreement(s) Regarding Assignment of Inventions, Confidentiality and Non-Solicitation" ("Confidentiality Agreements").  (Ver. Compl. ¶¶ 18, 20; Exs. 1 & 2.)  In January 2021, Defendants Alessandro Morari and Giacomo Domeniconi entered into these Confidentiality Agreements.  (Ver. Compl. ¶ 18; Exs. 1 & 2.)  Defendant Bartolomeo Garofalo entered into a Confidentiality Agreement with Prezerv in May 2021.  (Ver. Compl. ¶ 20; Ex. 3.)  These Confidentiality Agreements were reasonable measures taken to protect Prezerv's confidential information and trade secrets.  They included provisions prohibiting the use or disclosure of any of Prezerv's confidential information and acknowledging the need for injunctive relief to remedy a breach, among other terms.  (Ver. Compl. ¶ 18; Exs. 1, 2 & 3.)

While engaged by Prezerv, Morari, Domeniconi, and Garofalo were tasked with responsibilities to help develop Prezerv's machine learning algorithm, database management, annotation of ground penetrating radar ("GPR") data, among others.  (Ver. Compl. ¶¶15-17, 20, 23.)  Prezerv's data and work product was stored on different repositories including Prezerv-issued laptops, Google "cloud" drives, and Slack and GitHub platforms.  (See Ver. Compl. ¶¶ 21, 24.)  Prezerv was simultaneously applying for grant funding, negotiating opportunities with potential customers, and preparing and filing a patent application.  (Ver. Compl. ¶¶ 25-33.)

In July 2021, the relationship between Prezerv and Defendants began to sour.  (Ver. Compl. ¶¶ 34-35.)  Immediately following notice from Prezerv's CEO that their time with Prezerv was ending, Defendants began efforts to abscond with Prezerv's confidential information and trade secrets, destroy Prezerv's copies of the same, and hide all evidence of their malfeasance.  (Ver. Compl. ¶¶ 36-40.)  These efforts escalated after Defendants were officially terminated on July 22 and 23, 2021.  (Ver. Compl. ¶¶ 41-48, 64-68, 75-85.)  Defendants' actions were breathtaking in their audacity and included the following:

- Copying for themselves data from Prezerv's laptops and online storage drives and platforms including Google, Slack, and GitHub.  (Ver. Compl. ¶¶ 36, 40-45, 60, 64-74.)

- Attempting to destroy the data on Prezerv's laptops, online storage drives, and online platforms including Google, Slack, and GitHub.  (Ver. Compl. ¶¶ 36, 38, 40-45, 48, 60, 64-85.)

- Changing various settings and policies to hide evidence of their theft and destruction of Prezerv's data from Prezerv's online storage drives and platforms.  (Ver. Compl. ¶¶ 43.)

3

- Attempting to "scrub" their Prezerv-provided laptops to not only destroy all evidence of their theft and destruction of data from Prezerv's laptops, but also destroy evidence of their misappropriation and use of that same data. (Ver. Compl. ¶¶ 64-68.)

Defendants' actions were not constrained to mere theft and destruction—Defendants quickly began misappropriating Prezerv's confidential information and trade secrets for their own improper competing use. This included hijacking Prezerv's business plans and targeting the potential customer that Prezerv had been negotiating with for months. (Ver. Compl. ¶¶ 70-75.) Defendants' "own" plans relied on data collected and work product developed by Prezerv, giving them an unearned "head start" on their own designs. (Ver. Compl. ¶¶ 69-74, 86.) More blatantly, Defendants began simply replacing Prezerv's name on various pitch decks and other documents with their own. (Ver. Compl. ¶ 71-74.) Indeed, some of those drafts still retained reference to "Prezerv" (and photographs of Prezerv's CEO, Mr. Raufi), making it abundantly clear that Defendants were building their own business—Solidium.AI, for which they filed a Certificate of Incorporation with the Delaware Division of Corporations on October 4, 2021— using Prezerv's own confidential information and trade secrets. (Ver. Compl. ¶¶ 71-74.) Forensic analysis has even shown that Defendants kept abundant copies of Prezerv's data, documents, and business plans in folders clearly labeled "Solidium," and that all of these efforts—the theft of Prezerv's data, the destruction of Prezerv's data, the creation of Solidium documents using Prezerv's data—was all done between the time that Mr. Raufi first suggested the end of the relationship between the Defendants and Prezerv in July 2021 and their ultimate (and intentionally delayed) return of Prezerv's laptops in mid-September 2021. (Ver. Compl. ¶¶ 64-68, 74; Ex. 4 (Spencer Aff.).)

4

Defendants' unabashed theft, destruction, and misappropriation of Prezerv's confidential information and trade secrets, and attempted cover-up of the same, breaches the Confidentiality Agreements executed by Defendants. (Ver. Compl. ¶¶ 18, 129-136.)  Further, it has caused substantial, on-going, irreparable harm to Prezerv.  (Ver. Compl. ¶¶ 86-90.)  To protect its interests and reclaim what it has lost, Prezerv brings the immediate motion.

<b>ARGUMENT</b>

Given the clear misappropriation and breaches by Defendants, and under the well-established standards governing preliminary injunctive relief, the Court should grant an order prohibiting any further use of Prezerv's confidential information and trade secrets by Defendants; ceasing any solicitation of clients or investment by Defendants relating to the confidential information and trade secrets misappropriated from Prezerv; requiring the return to Prezerv of all confidential information and trade secrets and documents/data related to the same; requiring the destruction of all other copies of Prezerv's confidential information and trade secrets in Defendants' possession, custody, or control (including any documents, data, or records deriving from the same); requiring the destruction of all documents and materials derived from Prezerv's confidential information and trade secrets; and requiring Defendants to certify compliance with the Court's order within thirty days.

## I.       STANDARD OF REVIEW

A preliminary injunction is appropriate where the moving party "may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits."  <u>Packaging Industries Group, Inc. v. Cheney</u>, 380 Mass. 609, 616 (1980).  The court balances the moving party's "risk of irreparable harm . . . against any similar risk of irreparable harm which granting the injunction would create for the opposing party.  What matters as to each party is not the raw

amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." Id.

Under Massachusetts law, a preliminary injunction should issue where, as here, Prezerv can establish: (1) that it has a probability of success on the merits; (2) it will be irreparably harmed if the injunction is denied; (3) the balance of interest as between the parties favors Prezerv (i.e., the harm to the movant if the injunction is denied outweighs the harm to the non-movant if the injunction is granted). Id. at 616-17. On the record set forth in the Verified Complaint supporting this Motion, Prezerv meets this standard, and an appropriate injunction should issue.

## II.   DEFENDANTS' BRAZEN MISAPPROPRIATION AND CLEAR BREACH OF THE CONFIDENTIALITY AGREEMENTS ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS

Prezerv's Verified Complaint and accompanying exhibits clearly show that it is likely to succeed on the merits of its claims against Defendants. Prezerv has brought multiple claims against Defendants, and while Prezerv is confident that it will succeed on all of them, given what Prezerv has already uncovered and submits with its Verified Complaint, the Court need go no further than the undisputed breach of Prezerv's Confidentiality Agreements for the purpose of this motion. (Count V.)

### A.   The Confidentiality Agreements Are Valid, Enforceable Contracts

The Confidentiality Agreements between Prezerv and Defendants Morari, Domeniconi, and Garofalo are binding contracts signed and agreed to by all parties. As discussed above, these Confidentiality Agreements included terms requiring Defendants to keep Prezerv's confidential information and trade secrets confidential, and prohibiting Defendants from using or disclosing Prezerv's confidential information and trade secrets without prior written consent (which has

never been given).  (Exs. 1-3, §1.)  The Confidentiality Agreements also required Defendants to
return all copies of Prezerv's confidential information and trade secrets as well as any of
Prezerv's property "immediately upon termination."  (Exs. 1-3, §2.)  Prezerv's employment of
Defendants Morari and Domeniconi and Prezerv's consulting engagement of Defendant Garofalo
constituted consideration for these, and all other, provisions of the Confidentiality Agreements.

Massachusetts has long allowed employers to use restrictive covenants to as a reasonable
measure to prohibit the use of their confidential information and trade secrets in a manner that
will unfairly benefit others.  Club Aluminum Co. v. Young, 263 Mass. 223, 226 (1928); see also
Merrill Lynch, Pierce, Fenner & Smith v. Dewey, 18 Mass. L. Rptr. 49 at *5-6 (Mass. Super. Ct.
2004) ("Injunctive relief is warranted to prevent misappropriation and unlawful use of
confidential records . . . in which the former employee and employer entered into a contract that
restricts the former employee's use of such material").  Further, "it is well settled under
Massachusetts law that an employer may utilize a [restrictive covenant] as a condition of hiring
or retaining an employee and that continued employment is sufficient consideration to enforce
such a covenant." Mancuso-Norwalk Ins. Agency, Inc. v. Rogowski-Verrette Ins. Agency, LLC,
30 Mass. L. Rptr. 455, 2012 WL 6629644, at *3 (Mass Sup. Ct. Nov. 8, 2012); see also Horner
v. Boston Edison Co., 695 N.E.2d 1093, 1096 (Mass. App. Ct. 1998) (release agreement found
enforceable where the employee signed it as a condition of continued employment).  As
discussed below, the restrictive covenants between Prezerv and Defendants protect a legitimate
business interest, are reasonable in scope, and their enforcement is in the public interest.  As a
result, they are enforceable provisions of a valid contract.

1.      The Confidentiality Agreements Protect a Legitimate Business Interest:
        Prezerv's Confidential Information, Trade Secrets, and Goodwill

Confidential information and trade secrets are, inarguably, legitimate business interests, and the protection of the same merits injunctive relief.  Boulanger v. Dunkin' Donuts Inc., 442, Mass. 635, 641 (2004) (injunction issued to protect operating manuals, recipes, new product development, and other information).  Similarly, the protection of one's goodwill with clients and the marketplace justifies preliminary relief.  Id. at 578.

Here, the confidentiality/non-use provisions of the Confidentiality Agreements are necessary to protect Prezerv's confidential information, trade secrets, and goodwill including with clients and investors, as well as potential clients and potential investors.  Defendants were entrusted with access to Prezerv's code, data, and business plans.  In return, Defendants misappropriated this information and have used it to kick-start their own competing business. Moreover, Defendants deleted much of this data on their way out the door—effectively burning both the bridge and the blueprints on how to reconstruct it.  Documents retrieved from devices used by the Defendants reveals that Defendants are now approaching both a potential customer that has already been in negotiations with Prezerv, as well as investors that Prezerv may itself approach for funding, creating confusion and undermining Prezerv's ability to enter into relationships with the same.  (This is particularly likely if Prezerv must spend months repairing the damage and recreating the work product destroyed by Defendants.)

For these reasons, the confidentiality/non-use provisions not only protect legitimate business interests, but their enforcement is necessary to both protect those interests and prevent further irreparable harm.

2.  <u>The Confidentiality Agreements Are Reasonable</u>

The Confidentiality Agreements are reasonable.  They only prohibit the disclosure and use of Prezerv's "confidential information" as defined, which includes "proprietary information," itself including trade secrets, product ideas, designs, configurations, processes, formulas, software, code, inventions, data, and marketing plans and strategies, among other things.  (Exs. 1-3 §7.1).  This was all information that Prezerv took reasonable efforts to keep confidential. (Ver. Compl. ¶¶ 18, 45, 56.)

Notably, the confidentiality/non-use provisions did not include general knowledge, concepts, or skills;  nor did they prohibit Defendants from competing with Prezerv --  only from using Prezerv's confidential information and trade secrets.  <u>New England Overall Co., Inc. v. Woltmann</u>, 343 Mass. 69, 75 (1961) ("although an employee may carry away and use general skill or knowledge acquired during the course of his employment, he may be enjoined from using or disclosing confidential information so acquired").  Despite their reasonableness, Defendants' misappropriation and destruction targeted the very material that this provision was meant to protect, that they then aggressively used for themselves to give their own venture a head start.

3.  <u>Enforcement is Consistent with Public Interest</u>

The final factor for this Court's consideration is whether enforcing the Confidentiality Agreements would be consistent with the public interest.  It is well-established the enforcement of contractually-protected interests such as those at issue here are exactly that.  <u>See</u> <u>Boulanger v. Dunkin' Donuts, Inc.</u>, 815 N.E.2d 572, 576-77 (Mass. 2004).  It is "elementary that an unambiguous agreement must be enforced according to its terms." <u>Schwanbeck v. Federal-Mogul Corp.</u>, 412 Mass. 703, 706 (1992).  "It is in society's best interest to recognize and enforce agreements which [are] voluntarily entered into and accepted."  <u>Shipley v. Kozlowski</u>,

926 F. Supp. 28, 30 (D. Mass. 1996). "Allowing an individual to disregard such a promise would result in behavior which should not be condoned or encouraged." Id. The public interest is therefore served by enforcing the restrictive covenant at issue.

**B.     Prezerv's Forensic Investigation Establishes that Defendants Breached the Confidentiality Agreements**

Through its own investigation, including forensic analysis of the laptops used by the Defendants, Prezerv has already amassed substantial evidence proving that Defendants have breached their Confidentiality Agreements. This includes, but is not limited to, evidence showing that Defendants 1) refused to return Prezerv's property (laptops and hard drives) upon termination, 2) downloaded data, code, and documents stored on Prezerv's Slack platform, GitHub repositories, and Google cloud servers—and then deleted much of the same; 3) copied data off of their Prezerv-provided laptops onto their own storage devices, 4) incorporated their own competing business (Solidium), and 5) used Prezerv's confidential information and trade secrets to give that competing business an improper "head start"—sometimes by doing little more than replacing Prezerv's name on various documents with their own. Such evidence establishes clear breaches of the Confidentiality Agreements, and the likelihood that Prezerv will ultimately prevail on its claims.

**III.    IF PRELIMINARY INJUNCTIVE RELIEF IS NOT PROVIDED, PREZERV WILL BE IRREPARABLY HARMED**

As discussed above, preliminary injunctive relief is necessary to protect Prezerv's key confidential information, trade secrets, and goodwill, as well as its ability to secure investment from potential funders and business from potential clients. Irreparable harm is an injury "which is not capable of vindication by a final judgment at law or in equity." Hemlock Associates of Lakeville, Inc. v. Hyman, 70 Mass. App. Ct. 1102, *2 (2007) (1:28 decision) (citing to

Packaging Industries, supra, affirming single justice's issuance of injunction where potential temporary loss of use of land was at issue).

Here, vindication may not be capable through a final judgment because Defendants are *already* using Prezerv's confidential information and trade secrets to kick start their own business, prepare patent applications, and entice clients and investors.  If Defendants are allowed to continue as they have and apparently intend to continue, then Prezerv risks being precluded from obtaining clients or protection over its own confidential information and intellectual property.  See HX In Boston, LLC v. Berggren, 23 Mass. L. Rptr. 545 at *6 (Mass. Super. Ct. 2008) (quoting Jillian's Billiard Club of America, Inc. v. Beloff Billiards, Inc., 35 Mass. App. Ct. 372, 375-376 (1993) ("Injunctive relief is often appropriate in trade secret cases to insure against additional harm to the trade secret owner from further unauthorized use of the trade secret and to deprive the defendant of additional benefits from its wrongful conduct.")).  Further, Defendants will likely have destroyed Prezerv's goodwill with clients and partners such as Autostrade, if not by having poached them for their own, then by delaying Prezerv's ability to deliver: their destruction of Prezerv's data and code dramatically slows down and impairs Prezerv's ability to perform.  See Bowne, Inc. v. Levine, 7 Mass. L. Rep. 685 at *14 (Mass. Super. Ct. 1997) (citing Kroger v. Stop & Shop Cos., 13 Mass. App. Ct. 310, 322 (1982) (granting preliminary injunction because "the loss of goodwill has been recognized as being particularly hard to quantify")).

There should be no debate from Defendants over the need for injunctive relief, as they have already recognized it.  This is because the Confidentiality Agreements acknowledge, and therefore Defendants concede, the risk of irreparable harm caused by their breach of those agreements and the need for injunctive relief.  (Exs. 1-3, §8.1.)

## IV.   THE BALANCE OF EQUITIES FAVORS ENFORCEMENT

If the relief sought through this motion is provided, it will cause no unexpected or unwarranted harm to Defendants.  Instead, the injunctive relief sought will only enforce the terms the Defendants agreed to, begin to repair the damage they caused, and protect the record as required for discovery, while this action proceeds to trial.  Any harm that Defendants might experience will result from their own malfeasance; but allowing a former employee's "harm" to take priority in the current scenario would render restrictive covenants unenforceable and businesses "would never be able to protect" themselves.  Cereva Networks v. Lieto, 13 Mass. L. Rptr. 694, 2001 WL 1228040, at *6 (Mass. Super. Ct. 2001) (awarding injunction); see also Merrill Lynch, Pierce, Fenner & Smith v. Dewey, 18 Mass. L. Rptr. 49 at *9 (Mass. Super. Ct. 2004) (finding "balance of harms weighs in favor" of employer seeking to restrain use of its proprietary and confidential information by former employee).  As a result, the balance of equities favors enforcing the agreed-upon restrictive covenants.

## V.   DEFENDANTS' MISAPPROPRIATION HAS BEEN EXTREME AND OUTRAGEOUS, AND PREZERV SHOULD NOT BE PUT AT FURTHER RISK

Finally, the need for injunctive relief is emphasized by Defendants' extreme malfeasance. Not only have they stabbed their former employer in the back, but they tried to cover the stab wounds and ditch the knife.  Whether by deleting data, scrubbing hard drives, deleting user accounts, or otherwise, they have shown a willingness to go to great lengths to destroy record of their transgressions.  Had it not been for security alerts sent by Slack and GitHub (Ver. Compl. ¶¶ 43, 75), Prezerv might not have learned of Defendants' attempts to purge those repositories and might not have been able to save the little data it could.  Had it not been for hiring an expert to engage in extensive forensic analysis (see generally, Ex. 4 (Spencer Aff.)), Prezerv may not have learned how Defendants were using Prezerv's confidential information and trade secrets to

12

kick start their own company and undermine Prezerv until it was too late—maybe not until after Defendants stole clients, obtained funding, secured a patent, and effectively froze Prezerv out of the market.  This Court must order an appropriate injunction  to prevent further irreparable harm and to begin to make Prezerv whole again, particularly where Defendants have exhibited a repeated willingness to take such shameless measures.

## CONCLUSION

For all the reasons stated above, Prezerv moves this Court for an order granting a preliminary injunction that will prohibit any further use of Prezerv's confidential information and trade secrets by Defendants, cease any solicitation of customers or investment by Defendants relating to the confidential information and trade secrets misappropriated from Prezerv, require the return to Prezerv of all confidential information and trade secrets and documents/data related to the same, and require the destruction of all other copies of Prezerv's confidential information and trade secrets in Defendants' possession, custody, or control (including any documents, data, or records deriving from the same).  A proposed order has been submitted to the Court together with this Memorandum.

November 9, 2021                            Respectfully submitted,

                                            PREZERV TECHNOLOGIES, INC.

                                            By its attorneys,

                                            /s/ William F. McGonigle_____
                                            Raymond P. Ausrotas, Esq. (BBO #640315)
                                            RAusrotas@arrowoodllp.com
                                            William F. McGonigle, Esq. (BBO #569490)
                                            wmcgonigle@arrowoodllp.com
                                            ARROWOOD LLP
                                            10 Post Office Square,
                                            7th Floor South
                                            Boston, MA 02109
                                            T: 617-849-6200

13

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SECTION

PREZERV TECHNOLOGIES, INC.,

      Plaintiff,

      v.

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

      Defendants.

## <u>PRELIMINARY INJUNCTION</u>

After review of the Verified Complaint, Plaintiff's Motion/Memorandum for a

Preliminary Injunction, and the Affidavit of Mark Spencer, it is hereby ORDERED that the

Defendants, Alessandro Morari, Giacomo Domeniconi, Bartolomeo Garofalo, and Solidium.AI,

Inc., their officers, agents, employees, attorneys, and those persons in active concert with them

who receive actual notice of this Order:

1.      Are enjoined from taking any and all action to conceal their alleged misappropriation of

Prezerv Technologies, Inc.'s confidential information, trade secrets, and/or assets.

2.      Shall immediately cease all use of any and all data concerning Prezerv Technologies,

Inc., and any and all data, documents, or business plans derived from Prezerv Technologies,

Inc.'s confidential information, trade secrets, documents, data, and/or assets.

3.      Shall collaborate in good faith to return or otherwise restore to Prezerv Technologies, Inc. all data, documents, and/or assets taken, deleted, or destroyed by Defendants.  Such efforts shall be completed within 30 days of this order.

4.      Shall, after return to Prezerv Technologies, Inc., destroy all copies of all data, code, documents, business plans, communications, or other records taken from Prezerv maintained in any repository to which Defendants have access, be it physical, digital, online, offline, cloud-based, stored on a third-party server (e.g., IBM), or otherwise.

5.      Shall destroy all data, code, documents, business plans, communications, or other records derived from Prezerv's confidential information and/or trade secrets maintained in any repository to which Defendants have access, be it physical, digital, online, offline, cloud-based, stored on a third-party server (e.g., IBM), or otherwise.

6.      Are enjoined from conducting any business relying upon any of Prezerv's confidential information, trade secrets, and/or other assets.  This includes but is not limited to being enjoined from :

> a.  accepting any or all funds or capital from any or all potential investors, partners, and/or customers, including but not limited to Y Combinator and/or similar startup accelerator programs;
>
> b.  soliciting Prezerv's potential clients, including but not limited to Autostrade per l'Italia (and its affiliates);
>
> c.  developing any software or code using Prezerv's code, data, confidential information, and/or trade secrets;
>
> d.  pursuing any patent over any technology, technique, process or otherwise related to or using any of Prezerv Technologies, Inc.'s confidential

information, trade secrets, or intellectual property.  In the event that Defendants have already submitted a patent application, Defendants shall notify the United States Patent and Trademark Office ("USPTO") of Prezerv's claims, provide the USPTO with a copy of Prezerv's Verified Complaint, and withdraw any patent applications concerning any of Prezerv's confidential information, trade secrets, and/or intellectual property.

7.     Shall, within 30 days of this order, certify compliance with all of the above under the pains and penalties of perjury.


_____                                 _____

Date                                           Superior Court Judge

4

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SECTION

21-2585

---

PREZERV TECHNOLOGIES, INC.,

   Plaintiff,

   v.

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

   Defendants.

Civil Action No. _____

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
2021 NOV -9 P 2: 01
SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

---

## MOTION FOR SHORT ORDER OF NOTICE

Plaintiff Prezerv Technologies, LLC respectfully moves this Court for a short order of

notice requiring the Defendant to appear before this Court for a hearing on its Motion for a

Preliminary Injunction in the above matter on either November 18 or the morning of November

19,[1] at a time convenient for the Court, or at such other date and time as the Court may deem

appropriate or necessary.

---

[1] Plaintiff is simultaneously seeking temporary injunctive relief through an ex parte motion under Mass. R. Civ. P. 65(a).  Pursuant to that rule, such temporary relief cannot exceed 10 days without good cause shown or consent of the parties.  Plaintiff requests the hearing sought above be scheduled before the expiration of those initial 10 days but will consider later dates if sufficient assurances are provided that the protections sought by the ex parte motion will continue to apply.

Dated: November 9, 2021

Respectfully submitted,

PREZERV TECHNOLOGIES INC.

By its attorneys,

/s/ William F. McGonigle_____
Raymond P. Ausrotas, Esq. (BBO #640315)
RAusrotas@arrowoodllp.com
William F. McGonigle, Esq. (BBO #569490)
wmcgonigle@arrowoodllp.com
ARROWOOD LLP
10 Post Office Square,
7th Floor South
Boston, MA 02109
T: 617-849-6200

5

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SECTION

21-2585

PREZERV TECHNOLOGIES, INC.,

    Plaintiff,

    v.

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

    Defendants.

Civil Action No.

## MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, the Plaintiff hereby

moves that the Court appoint Frank Gallagher of Larry Press Inc., 2284 Flatbush Ave., Brooklyn,

NY 11234 as special process server for the purpose of serving pleadings in this action. The

Plaintiff states that said process server is a disinterested party, over the age of 18, and

experienced in the service of process.

Dated: November 9, 2021

Respectfully submitted,

PREZERV TECHNOLOGIES INC.

By its attorneys,

/s/ William F. McGonigle
Raymond P. Ausrotas, Esq. (BBO #640315)
RAusrotas@arrowoodllp.com
William F. McGonigle, Esq. (BBO #569490)
wmcgonigle@arrowoodllp.com
ARROWOOD LLP
10 Post Office Square,
7th Floor South
Boston, MA 02109
T: 617-849-6200

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
BUSINESS LITIGATION SECTION

*21-2585*

---

PREZERV TECHNOLOGIES, INC.,

    Plaintiff,

    v.

ALESSANDRO MORARI, GIACOMO
DOMENICONI, BARTOLOMEO
GAROFALO, and SOLIDIUM AI, INC.,

    Defendants.

---

## TEMPORARY RESTRAINING ORDER AND ORDER TO PRESERVE EVIDENCE

    After review of the Verified Complaint, Plaintiff's Motion/Memorandum for a Temporary

Restraining Order and Order to Preserve Evidence, and the Affidavit of Mark Spencer, it is

hereby ORDERED that the Defendants, Alessandro Morari, Giacomo Domeniconi, Bartolomeo

Garofalo, and Solidium.AI, Inc., their officers, agents, employees, attorneys, and those persons

in active concert with them who receive actual notice of this Order:

1.    Are temporarily restrained from taking any and all action to conceal their alleged

misappropriation of Prezerv Technologies, Inc.'s confidential information, trade secrets, and/or

assets.

2.    Shall immediately cease all access to and/or opening, copying, transferring, deletion,

destruction, or manipulation of any and all data concerning Prezerv Technologies, Inc. and/or

Solidium.AI, including but not limited to all data on any devices (e.g., laptops and smart

phones), drives (e.g., external hard drives), or online storage repositories or platforms (e.g.,

Google, Slack, GitHub, Monday.com, IBM, AWS, Microsoft Azure) except as necessary to

comply with this order.  Defendants may resume access to all pertinent devices, drives, and

online storage repositories only after completing the collection and preservation efforts described

below.

3.      Shall, no later than within one day of receiving this order, contact counsel for Plaintiff

Prezerv Technologies, Inc. to coordinate the collection and preservation of all data on all devices

and drives controlled by or in the possession of Defendants.  This includes all laptops, desktops,

external hard drives and storage devices (including any and all that have been connected to any

laptop, desktop, or otherwise that stored Prezerv's confidential information and/or trade secrets

at any time), cell phones, online storage ("cloud") drives, and online platforms (e.g., Google,

GitHub, Slack, Monday.com, IBM, AWS, Microsoft Azure).  Such collection and preservation

must be completed within ten days of this order unless further time is granted. The parties shall confer in good faith to select a

third-party vendor to conduct this collection and preservation, but the failure to come to an

agreement shall not excuse any delay in completing the collection and preservation, ~~Plaintiff~~

~~shall have ultimate approval of any vendor hired to conduct the collection and preservation,~~ and

~~any failure to complete the collection and preservation shall be held against the Defendants.~~

~~Defendants shall pay the costs incurred for the collection and preservation~~.  The data collected

and preserved through these efforts shall remain in the possession of the collecting vendor, with

no access provided to either Prezerv Technologies, Inc. or Defendants, unless and until either 1)

an agreement between the parties concerning access or 2) further order of this Court.

4.      Within ten days of this order, Defendants shall produce an index of all devices and drives

not already returned to Prezerv that ever contained any data, documents, or otherwise

constituting Prezerv's confidential information and/or trade secrets or any data, documents, or otherwise derived from the same.  Defendants shall certify under oath to the accuracy and completeness of this index and that all data from the devices and drives listed thereon has been collected and preserved as discussed above.

5. ~~Are temporarily restrained from conducting any business relying upon any of Prezerv's confidential information, trade secrets, and/or other assets.  This includes but is not limited to being restrained from accepting any or all funds or capital from any or all potential investors, partners, and/or customers.  It also includes drafting or submitting any patent applications or taking any further effort to obtain any potential patent.~~

MDRicciuti

MDRicciuti
Superior Court Judge
